UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WOODY'S OASIS and NAJLA
JAMIL NASSOURA,

   Plaintiffs,

v.                Case No. 1:13-CV-367

RON ROSENBERG, Acting Chief,   HON. GORDON J. QUIST
Administrative Appeals Office of United
States Citizenship and Immigration Services,
et al.,

   Defendants.
_____/

**OPINION**

  This case arises under the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq*. Plaintiffs, Woody's Oasis and Najla Jamil Nassoura, seek review of a decision by the United States Citizenship and Immigration Services (USCIS) to deny a Form I-140 immigration petition for alien worker (I-140 petition). Defendants have filed the Certified Administrate Record. Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Defendants' motion will be granted and Plaintiffs' motion will be denied.

**I. Background**

  Woody's Oasis, a partnership, is a restaurant in East Lansing that specializes in Middle Eastern Cuisine. (CAR 79-80.)[1] The restaurant was established in 1985, and purchased by its current owner in 1999. (CAR 80, 212.) Nassoura is a Lebanese citizen who entered the United States in July 2000 as a non-immigrant visitor. (CAR 79.)

---

[1] All CAR citations are to the Certified Administrative Record.

On April 30, 2001, Woody's Oasis filed an application for alien labor certification with the Department of Labor (DOL). (CAR 86.) Woody's Oasis sought to employ Nassoura as a specialty cook, a full-time position. (*Id.*) DOL established a prevailing wage of $10.10 per hour, or $21,108 per year. (*Id.*) On August 6, 2007, DOL approved the labor certification. (CAR 85.)

Following the DOL certification, Woody's Oasis filed an I-140 petition and Nassoura filed an I-485 petition to change status. (CAR 3-7, 79-81.) As part of its application and in response to a USCIS request, Woody's Oasis submitted tax returns for 2001-2008 and a letter from its accountant. (CAR 92-212.) The tax returns demonstrated that Woody's Oasis claimed a net loss in years 2001-2004 and 2006, and net income of $91,136.00 in 2005, $35,969 in 2007, and $107,084 in 2008. (*See* Defs.' Br. in Supp. of Summ. J. at 3.) They also showed that Woody's Oasis did not have net assets greater than $5,000 during the time period from 2001 to 2008.[2] (*Id.*)

The letter from Woody's Oasis's accountant, Ruth Nihart. explained that Woody's Oasis had begun expanding in 2001 by increasing the size of the restaurant and the variety of items on the menu, as well as commencing sales to grocers, college dorms, and food courts. (CAR 2012.) The letter explained:

> The expansion costs resulted in a short and temporary period during the year 2001 when there was neither net income or net current assets, however all bills were paid; all employees at the time were paid and additional expenses would have been paid out of the assets of the owners of the business. Since 2001there has been either net income, net current assets, or both, sufficient to pay the $21,1008 offered wage.

(Id.) Nihart went on to state figures for assets from 2001 to 2008. (*Id.*) However, Defendants state that these figures were not computed correctly, and Plaintiffs do not dispute this assertion. (Defs.' Br. at 3.)

---

[2] The tax returns do not include a line item for net assets. Rather, these figures are taken from calculations included in Defendants' brief. (Defs.' Br. at 3.) Plaintiffs do not dispute these calculations.

On September 21, 2009, the USCIS denied Woody's Oasis's I-140 petition based on a finding that Woody's Oasis lacked the ability to pay Nassoura the proffered wage. (CAR 75-78.) Woody's Oasis appealed the decision to the USCIS's Administrative Appeals Office, which dismissed the appeal. (CAR 30-37.)

## II. Standard of Review

The motions before the Court are styled as summary judgment motions. The Sixth Circuit has "suggested that the use of summary judgment is inappropriate for judicial review of an administrative action under the Administrative Procedures Act." *Donaldson v. United States*, 109 Fed. App'x 37, 40 (6th Cir. 2004). Nonetheless, a district court may enter judgment on a summary judgment motion so long as the court applies the proper standard of review and does not consider evidence outside the administrative record. *Id. See also Alexander v. Merit Sys. Protection Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999).

Under the APA, a court must set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866 (1983). The agency must, however, articulate a "rational connection between the facts found and the choice made." *Id.* at 43, 103 S. Ct. at 2866. Judicial review is limited to the administrative record before the agency at the time of its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20, 91 S. Ct. 814, 825 (1971).

### III. Discussion

***Statutory and Regulatory Framework***

Under the Immigration and Nationality Act (INA), a non-citizen skilled worker may obtain a visa to work in the United States. 8 U.S.C. § 1153(3)(A)(i). Such visas are available only if there are insufficient workers who are able, willing, and qualified to fill the position that the non-citizen seeks to fill, and the employment of the non-citizen would not adversely affect the wages and conditions of U.S. workers. 8 U.S.C. § 1182 (5)(A)(i). Authority to administer the INA has been delegated to the Department of Homeland Security and sub-delegated to the USCIS. 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 2.1.

If an employer seeks to employ a non-citizen skilled worker, the employer and non-citizen must follow a three-step process. *See Matovski v. Gonzalez*, 492 F.3d 722, 726-27 (6th Cir. 2007). First, the employer must file an application with the DOL, and obtain a certification from the DOL stating that there are insufficient qualified, able, and willing U.S. workers to fill the position. 8 U.S.C. § 1153(b)(3)(C); 1182 (a)(5)(A)(i)(I). As part of the certification, the DOL establishes the wage that the prospective employer must pay the prospective employee (the proffered wage). 8 U.S.C. § 1182(p).

If the DOL approves the labor certification, the employer must then file an I-140 petition with the USCIS. *See Matovski*, 492 F.3d at 727. The relevant regulation provides that the employer must show that it has the ability to pay the proffered wage starting on the date that the employer filed its application with the DOL (the priority date) and continuing until the USCIS approves the petition. 8 C.F.R. § 204(5)(g)(2). Evidence of the ability to pay may take the form of annual reports, federal tax returns, or audited financial statements. *Id.* In some instances, additional evidence such

4

as profit/loss statements, bank account records, or personnel records may be used to establish the ability to pay. *Id.*

Finally, the non-citizen may apply for adjustment of status while the I-140 application is pending or after it is approved. 8 U.S.C. § 1255(a)(3). Approval of the application for adjustment of status is contingent upon approval of the employer's I-140 petition. 8 U.S.C. § 1255(a).

### *Standing*

Defendants assert that Nassoura, as the mere beneficiary of an I-140 petition, lacks prudential standing to challenge the USCIS's decision in this case. An identical argument was recently rejected by the Sixth Circuit. *See Patel v. USCIS*, 732 F.3d 633, 636-38 (6th Cir. 2013). Accordingly, the Court finds that Nassoura has prudential standing in this case.

### *The USCIS's Decision*

Plaintiffs contend that the Court should overturn the USCIS's decision denying the I-140 application submitted by Woody's Oasis. Plaintiffs argue that the regulation that the USCIS relied upon in determining that Woody's Oasis lacked the ability to pay the proffered wage is ultra vires to the statute because it imposes a requirement inconsistent with the relevant statute. Plaintiffs contend that the rigid enforcement of that regulation has resulted in the USCIS denying petitions that meet the statutory requirements.

The regulation at issue provides:

Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. . . . In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

8 C.F.R. § 204.5(g)(2). In applying the regulation and determining the ability to pay, the USCIS first looks to whether the petitioner has actually paid the beneficiary during the period at issue. (CAR 32-33.) If the petitioner has not employed and paid the beneficiary, the USCIS next examines the net income figures in the petitioner's federal income tax return. (CAR 33.) If the petitioner's net income does not exceed the proffered wage, the USCIS examines the petitioner's net current assets. (CAR 34.)

The ability-to-pay test was originally upheld by the Board of Immigration Appeals (BIA) in 1977. *Matter of Great Wall*, 16 I&B Dec. 142, 145 (BIA Reg'l Comm'r 1977). In upholding the test, the BIA noted that, in evaluating an employer's petition, the agency had to determine whether the job offer was realistic and whether the wage could be paid.[3] *Id.* The D.C. Circuit subsequently adopted this reasoning in *Masonry Masters, Inc. v. Thornbugh*, 875 F.2d 898, 901 (D.C. Cir. 1989). In that case, the court explained that the investigation into an employer's ability to pay was "clearly within the [agency's] authority because it relates to whether [an employer's] job offer is realistic." *Id.* The Court finds this long-standing precedent persuasive, and agrees that the USCIS has the authority to investigate an employer's ability to pay.

Plaintiffs argue, however, that the test has veered from its original purpose of determining whether a job offer is realistic. Plaintiffs point to the USCIS's focus on "accounting entities," such as net income and assets, which Plaintiffs assert are not relevant to determining whether an employer has the ability to pay the proffered wage. Plaintiffs argue that, by focusing solely on these "accounting entities," the USCIS has created a freestanding and rigid requirement that is not contemplated by the statute.

---

[3] At that time, the relevant agency was the USCIS's predecessor, the Immigration and Naturalization Service (INS).

As the Seventh Circuit has explained, "accounting entities" are poor indicators of an employer's ability to pay an employee's salary. *Constr. & Design Co. v. USCIS*, 563 F. 3d 593, 595 (7th Cir. 2009). In *Construction & Design Co.*, Judge Posner explained that, because corporations have an incentive to minimize tax liability, net income may not accurately reflect an employer's ability to pay. *Id.* Rather, he explained, cash flow provides a better indicator. *Id.* He noted that a flow-through entity, such as an S-corporation or partnership, has an incentive to distribute earnings to its owners. *Id.* No matter which factors are considered, however, the employer bears the burden of proving its ability to pay. *Id.*

In this case, the USCIS looked beyond net income and net assets to the totality of the circumstances, including Woody's Oasis's gross receipts, labor costs, and compensation paid to its owners. (CAR 37.) The USCIS found that Woody's Oasis did not appear to pay substantial compensation to either its employees or owners, and that there was no evidence demonstrating that the owners would be willing and able to forego compensation to pay Nassoura the proffered wage. (*Id.*) The USCIS further noted that Woody's Oasis had not provided evidence of other relevant factors, such as the historical growth of the business or the reputation of the business within the industry. (*Id.*) Thus, the USCIS concluded that, in "assessing the totality of the circumstances," Woody's Oasis had not established the continuing ability to pay the proffered wage. (*Id.*)

Under the circumstances, the USCIS did not apply the ability-to-pay test in an overly formalistic way. Rather, the USCIS looked to the totality of the circumstances, and found that Woody's Oasis had not shown that it had the ability to pay the proffered salary from the priority date. Accordingly, the USCIS's decision did not exceed its regulator authority.

Plaintiffs next argue that even if the regulation is lawful, the USCIS's decision was nonetheless arbitrary and capricious. Plaintiffs contend that the USCIS was overly focused on the

7

net income and assets of Woody's Oasis, and failed to consider the history of the business, its expansion, and its increase in revenues during the period in question. Plaintiffs argue that, in doing so, the USCIS misinterpreted its own regulation, which provides a "catch-all provision" that looks to the totality of the circumstances.

As discussed, the USCIS considered the totality of the circumstances. Even looking beyond net income and assets, it is unclear where Woody's Oasis would find the money to pay Nassoura's salary. Although Woody's Oasis's revenues increased during the period at issue, its costs — most notably the cost of goods and rent — increased substantially as well. During the relevant period, Woody's Oasis paid very little in employee salaries. Although Woody's Oasis had an incentive to pass income through to its partners, it did not do so. Thus, the evidence shows very little "air" in Woody's Oasis's income statements. *See Constr. & Design Co.*, 563 F. 3d at 595.

In response to this evidence, Plaintiffs merely point to Woody's Oasis's longevity and recent expansion. However, these factors provide no reason to believe that Woody's Oasis could find the extra money to pay Nassoura's salary. Although Woody's Oasis argues with the evidence considered by the USCIS and its ultimate conclusion, it has not provided evidence to justify a contrary conclusion. Thus, it has not met its burden of demonstrating that it had the ability to pay.

The cases cited by Plaintiffs do little to advance its position. *See Constr. & Design Co.*, 563 F. 3d 593; *Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 880 (E.D. Mich. 2010). In *Constr. & Design Co.*, although the court looked beyond net income and assets, it ultimately found that the plaintiff had not demonstrated an ability to pay the employee's salary. *Constr. & Design Co.*, 563 F. 3d at 595. Similarly, in *Taco Especial*, the court considered evidence beyond net income and assets, but affirmed the USCIS's decision. *Taco Especial*, 696 F. Supp. 2d at 880.

Finally, Plaintiffs argue that the USCIS could not find that Woody's Oasis lacked the ability to pay the proffered wage because the DOL had already granted Woody's Oasis a labor certification. However, the "DOL's role in grating a labor certification is a limited one," focused on whether employment of a non-citizen "would adversely affect similarly situated American workers." *Masonry Masters*, 875 F.2d at 901. The USCIS is responsible for determining whether an employer can realistically pay the proffered wage. *Id.* Accordingly, this argument is unavailing.

### IV. Conclusion

The administrative record demonstrates that the USCIS made a reasoned decision, consistent with its statutory and regulatory authority, that Woody's Oasis failed to demonstrate that it had the ability to pay Nassoura the proffered wage. Accordingly, the Court will affirm the USCIS's decision, and grant judgment in favor of Defendants.

An Order consistent with this Opinion will be entered.


Dated: February 4, 2014                          /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE